**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GLORIA MARIE AGUILAR,

                       Petitioner,

v.

CLARICE STOVALL,

                       Respondent.

_____/

Case Number:  08-10353

HON. MARIANNE O. BATTANI

## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Gloria Marie Aguilar has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently a state inmate at the Robert Scott Correctional Facility in Plymouth, Michigan and challenges her convictions for one count of first-degree home invasion and one count of unarmed robbery.  Respondent has filed an Answer in Opposition to Petition for Writ of Habeas Corpus.  For the following reasons, the Court denies the petition.

**I.**      **FACTS**

Petitioner's convictions arise from an incident that took place in the home of Adrian Timmer in Kalamazoo, Michigan on July 20, 2004.  Timmer, 77 years of age, testified at trial as to the nature of his relationship with Petitioner and to the events leading to her conviction. When called to the witness stand, the trial court did not administer an oath to Timmer before he commenced his testimony.  Neither party brought this error to the attention of the trial court, and the trial progressed as usual.

According to Timmer, he met Petitioner when she approached him at his place of work begging for money. Petitioner introduced herself to Timmer as Marie Rodriguez. Over the course of the next several months, Timmer provided Petitioner with money and items, such as a cell phone, as she requested them. When Timmer began to suspect that Petitioner was taking advantage of him, he avoided further contact with her.

Several months later, Petitioner arrived at Timmer's home on the morning of July 20, 2004 and called to him through the door. Timmer had recently undergone back surgery, was taking prescription pain medication, and was feeling very weak. Timmer unlocked the door, but did not open it, thinking it was an employee who was expected to aid him at home. Petitioner opened the door begging for money in a semi-desperate state. Timmer, upon recognizing Petitioner, instructed her to leave his home, but she nonetheless pushed her way into the house. Timmer admitted to gently pushing Petitioner in an effort to force her to leave. Petitioner struck Timmer in the face, causing him to fall backward and lose consciousness. He testified that this blow left him with a partial black eye and redness on his cheek.

When Timmer regained consciousness, he found Petitioner in his bedroom rifling through his pants, which contained a small amount of cash. When Timmer asked once again for Petitioner to leave his home, she shoved him against a cabinet causing him to lose consciousness a second time. Timmer awoke as Petitioner was exiting his driveway toward her vehicle. He immediately noticed the cash from his pants was missing; there was also cash on the floor where it appeared to have been dropped by Petitioner. Timmer then discovered that the prescription pain medication he had been taking daily were  missing.

Timmer contacted the Kalamazoo Police Department to report the incident. Two uniformed officers arrived at Timmer's home that afternoon to take his statement; Timmer referred to his perpetrator as Marie Rodriguez.

The following day, Timmer visited the hospital due to pain he was experiencing in his lower back. The hospital found two new fractures to his lower vertebra as a result of the assault.

Approximately two weeks later, a detective from the Kalamazoo Police Department contacted Timmer to obtain a detailed statement regarding Petitioner and the events of the July 20, 2004.

James Roe, an employee of Timmer, testified that it was he and his wife, Doris Roe, that Timmer was expecting on the morning of July 20, 2004. The Roes had been assisting Timmer with personal and professional tasks while he recovered from surgery. James Roe arrived at Timmer's home on the afternoon of July 20 to find Timmer distraught and suffering from visible injuries to his face and lower back. Roe refilled a prescription for painkillers, since Timmer's pills were missing and he was experiencing pain as a result of the assault.

Officer Frederick Milton, Jr., one of the uniformed officers to visit Timmer's home after the incident, was called to testify during trial. According to Timmer's statement to Officer Milton, Timmer voluntarily let Petitioner into his home thinking it was neighborhood children. When Timmer realized it was Petitioner entering his home, he asked her to leave.

Detective Scott Szekely is the detective who contacted Timmer to further investigate the incident. Detective Szekely testified that he doubted Petitioner's name was in fact Marie Rodriguez. While discussing his investigation with a fellow detective, his co-worker informed him that a woman named Gloria Aguilar, similar in description to Marie Rodriguez, was

suspected in several larceny cases.  Detective Szekely then organized a photographic line-up

containing Gloria Aguilar's mug shot from a prior arrest.  Timmer was asked to view the

photographs, and he immediately identified Gloria Aguilar as the woman he knew as Marie

Rodriguez.  Petitioner's counsel declined to cross examine Detective Szekely.

Once Detective Szekely was excused, the court instructed the jury that it should not

consider the testimony regarding Petitioner's prior record as substantive evidence in determining

the facts of the case.  The court stated that the testimony was admitted only to connect the two

identities of Petitioner and to explain why Timmer participated in a photographic line-up.

Roland Warnicke, 79 years of age, testified that he met Petitioner approximately one and a

half years prior to the trial when she appeared at his home begging for money.  Warnicke

continued to give Petitioner money as she asked for it.  On one particular night, Petitioner visited

Warnicke's home again begging for money.  When Warnicke asked Petitioner to leave, she

pushed her way into the house and began to wrestle with him.  The altercation led Petitioner to

push Warnicke down the stairs leading to the concrete floor of his basement.  Warnicke lost

consciousness and sustained injuries to his head.  He admitted to asking Petitioner to remove her

pants on one occasion, and, when she complied, he decided to end the relationship.

Petitioner testified in her own defense, stating that Timmer voluntarily let her into his

home on the morning in question and allowed her to take a container of change from his bedroom.

Petitioner also testified that Timmer asked her to bathe him, and he became angry when she

refused.  He then used his cane to prevent Petitioner from leaving his home, and Petitioner stated

that she feared he would use the cane to strike her.  Petitioner testified that she pushed Timmer

only once in order to exit the house unharmed, and she denied robbing Timmer of cash or pain

medication.

## II.      PROCEDURAL HISTORY

Petitioner was tried before a jury in the Kalamazoo County Circuit Court and found guilty of one count of first-degree home invasion and one count of unarmed robbery.  In February 2005, Petitioner was sentenced to 20 to 40 years and 14 to 40 years respectively, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.      Petitioner was unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to raise and preserve an insanity or temporary insanity defense.

II.      The trial court unlawfully deprived Petitioner of her due process and equal protection rights to a fair trial when it unlawfully permitted the unsworn statement of a key prosecution witness, Adrian Timmer, to be used to convict Petitioner and when it admitted the improper other-acts evidence.

III.      The trial court reversibly erred in denying the defense motion for directed verdict because the evidence is insufficient for guilt on the 1st degree home invasion charge.

IV.      The trial court violated the United States and Michigan constitutions in sentencing Petitioner to a prison term of 20-40 years on a habitual offender 4th supplement arising out of the 1st degree home invasion conviction and to a prison term of 15-40 years on a habitual 4th supplement arising out of the unarmed robbery conviction.

Petitioner simultaneously filed a motion to remand to present additional evidence, which was denied by the Michigan Court of Appeals.  On October 17, 2006, the Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion, People v. Aguilar, No. 261725, 2006 WL 2956323 (Mich. Ct. App. Oct. 17, 2006).

In November 2006, Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  On January 29,

6

2007, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it

was not persuaded that the claims presented should be reviewed by the Court.  People v. Aguilar,

477 Mich. 1006, 726 N.W.2d 18 (2007).

In January of 2008, Petitioner filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, raising the following claims:

> I.    Petitioner was unlawfully deprived of the effective assistance of trial counsel when
>       trial counsel failed to raise and preserve an insanity or temporary insanity defense.
>
> II.   The trial court unlawfully deprived Petitioner of her due process and equal
>       protection rights to a fair trial when it unlawfully permitted the unsworn statement
>       of a key prosecution witness, Adrian Timmer, to be used to convict Petitioner and
>       when it admitted the improper other-acts evidence.
>
> III.  The trial court reversibly erred in denying the defense motion for directed verdict
>       because the evidence is insufficient for guilt on the 1st degree home invasion
>       charge.
>
> IV.   The trial court violated the United States and Michigan constitutions in sentencing
>       Petitioner to a prison term of 20-40 years on a habitual offender 4th supplement
>       arising out of the 1st degree home invasion conviction and to a prison term of 15-
>       40 years on a habitual 4th supplement arising out of the unarmed robbery
>       conviction.

Respondent submitted an Answer in Opposition to Petition for Writ of Habeas Corpus on

August 6, 2008.

## III.    STANDARD OF REVIEW

According to 28 U.S.C. § 2254, as amended by the Antiterrorist and Effective Death

Penalty Act of 1996 ("AEDPA"), the following standard of review is imposed on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the

7

adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254 also dictates that federal courts must presume the correctness

of state court factual determinations upon habeas review:

> In a proceeding instituted by an application for a writ of habeas corpus by a person
> in custody pursuant to the judgment of a State court, a determination of a factual
> issue made by a State court shall be presumed to be correct. The applicant shall
> have the burden of rebutting the presumption of correctness by clear and
> convincing evidence.

28 U.S.C. § 2254(e)(1).

The Supreme Court has explained the phrase, "clearly established federal law," as

referring to "the governing legal principle or principles set forth by the Supreme Court at the time

the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  The

holdings of Supreme Court decisions, as opposed to the dicta, form the governing legal principles

of a particular time.  Williams v. Taylor, 529 U.S. 362, 412 (2000).  Thus, a federal court

conducting habeas review must look to relevant Supreme Court precedent at the time the state

court rendered its decision.  See Id.

A state court decision is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite of that reached by the Supreme Court on a question of law, or if

the state court reaches a substantially different conclusion than the Court based upon a set of

materially indistinguishable facts.  Id. at 412-13.

8

An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal habeas court may not, however, find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, a habeas petitioner must demonstrate that the state court's application of clearly established federal law to the facts of his case was objectively unreasonable. Price v. Vincent, 538 U.S. 634, 641 (2003).

## IV.   ANALYSIS

### A.   Ineffective Assistance of Counsel

Petitioner claims that she was denied the effective assistance of counsel when trial counsel failed to raise and preserve an insanity or temporary insanity defense. Specifically, Petitioner contends that her history of depression, drug abuse and suicide attempts should have compelled trial counsel to have her sanity evaluated by a medical professional. Petitioner also alleges ineffective assistance of counsel for trial counsel's failure to object to the admission of Timmer's unsworn testimony. Petitioner raises this claim as an alternative to the allegation that the trial court violated her constitutional rights in admitting the unsworn testimony. The issues surrounding Timmer's unsworn testimony are addressed in the following section.

The Supreme Court has interpreted the Sixth Amendment as guaranteeing a citizen's right to the effective assistance of counsel in defending against criminal prosecutions. Strickland v. Washington, 466 U.S. 668, 685 (1984). The Court in Strickland set forth a two-pronged test for determining whether a habeas petitioner's right to the effective assistance of counsel has been

9

violated:

> First, the [petitioner] must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.  In order to obtain a reversal of a conviction for ineffective assistance of counsel, a petitioner must meet both prongs of the test.  Id.

To satisfy the first prong, deficient performance, a petitioner must demonstrate that counsel's assistance was objectively unreasonable in light of the surrounding circumstances.  Id. at 688.  The court reviewing trial counsel's performance must be highly deferential:  "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.  Thus, a petitioner bears the burden of overcoming a strong presumption that counsel's conduct constituted reasonable assistance or sound trial strategy based upon the particular facts of the case at the time of the challenged conduct.  Id. at 689-690.

The second prong of the Strickland test, prejudice to the defense, requires a petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome" of a trial.  Id.

Petitioner claims that she was previously diagnosed with depression, that she has a history of substance abuse and attempted on two occasions to commit suicide.  Petitioner has never undergone formal treatment for mental illness.  It is Petitioner's contention that trial counsel

should have arranged a mental health evaluation of Petitioner in contemplation of presenting a defense of insanity or temporary insanity.

The Michigan Court of Appeals held that an insanity or temporary insanity defense would have been at odds with the defense of innocence presented at trial:

> Defense counsel's strategy exploited the inconsistencies between Mr. Timmer's story and [Petitioner's] in order to support the defense theory that [Petitioner] did not commit the crimes charged. An insanity defense, on the other hand, is an affirmative defense used to avoid or reduce criminal responsibility. By use of that defense, the defendant does not deny his criminal conduct but denies responsibility for that conduct . . . Additionally, the chosen defense provided the possibility of acquittal, while the insanity defense would have merely provided an excuse for admitted criminal conduct.

People v. Aguilar, No. 261725, 2006 WL 2956323, at *2 (Mich. Ct. App. Oct. 17, 2006) (citations omitted).

Under Michigan law, the defense of insanity or temporary insanity is defined in pertinent part as follows:

> (1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness . . . or as a result of being mentally retarded . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity.

> (2) An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances.

> (3) The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.

MICH. COMP. LAWS § 768.21a (1979).

11

Petitioner has offered no evidence to support the claim that she was legally insane at the time she committed the crime such that the defense of insanity or temporary insanity would have been practicable.  Petitioner would have had the burden of proving beyond a preponderance of the evidence that she lacked the capacity to appreciate the wrongfulness of her actions when she forced her way into Timmer's home and proceeded to assault and rob him.  See MICH. COMP. LAWS § 768.21a(3).  Beyond Petitioner's vague statements regarding her history of mental instability, Petitioner fails to provide any support for her argument that an insanity defense was viable.  Conclusory allegations are insufficient to establish ineffective assistance of counsel. Moss v. Hofbauer, 286 F.3d 851, 864 (6th Cir. 2002) (holding that petitioner's conclusory allegations regarding counsel's choice to forego an opening statement were insufficient to establish ineffective assistance of counsel where they failed to articulate prejudice to the outcome of the trial).  As the Michigan Court of Appeals held, "[n]othing about [Petitioner's] past suggests that she lacked the substantial capacity to appreciate the wrongfulness of her conduct or conform to the law." People v. Aguilar, No. 261725, 2006 WL 2956323, at *2 (Mich. Ct. App. Oct. 17, 2006).  Moreover, according to Michigan law, a person suffering from mental illness is not necessarily insane.  See MICH. COMP. LAWS § 768.21a(1).  Counsel's decision to argue innocence was supported by Petitioner's trial testimony as to her innocence of the crimes charged.

Petitioner further contends that involuntary intoxication contributed to her insanity, and that counsel was ineffective in failing to raise this issue.  The Michigan Court of Appeals denied this claim, finding that Petitioner failed to offer any evidence to suggest that she was under the influence of drugs or alcohol at the time of the offense and that such consumption was involuntary.  Involuntary intoxication has been defined as involuntary ingestion of an intoxicant,

12

usually through trickery by another person.  <u>People v. Wilkins</u>, 184 Mich. App. 443, 449, 459 N.W.2d 57 (1990).  Section 768.21a(2) specifies that one who voluntarily consumes or injects drugs or alcohol at the time of the offense will not be considered legally insane based solely on intoxication.  Petitioner also fails in her habeas petition to present any evidence to support a claim of involuntary intoxication.

Petitioner has failed to present evidence of legal insanity at the time of the crimes. Therefore, this Court is not persuaded that the state court decision that counsel was not ineffective for failing to raise this defense was contrary to or an unreasonable application of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d).  In addition, adjudication of the claim in state court did not result in a decision based upon an unreasonable determination of the facts in light of the evidence presented at trial.  <u>See</u> <u>Id.</u>

**B.  Evaluation by a Mental Health Expert**

Petitioner also alleges that her indigency prevented her from receiving an evaluation by a mental health expert.  The Supreme Court has held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." <u>Ake v. Oklahoma</u>, 470 U.S. 68, 83 (1985).  Michigan law ensures that indigent defendants receive the tools necessary to build a defense, including the appointment of expert witnesses:

> If any person accused of any crime or misdemeanor, and about to be tried
> therefore in any court of record in this state, shall make it appear to the satisfaction
> of the judge presiding over the court wherein such trial is to be had, by his own
> oath, or otherwise, that there is a material witness in his favor within the
> jurisdiction of the court, without whose testimony he cannot safely proceed to a

13

> trial, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court.

MICH. COMP. LAWS § 775.15 (1979).  Petitioner made no preliminary showing of insanity and consistently maintained her innocence of the offenses charged.  Without an initial showing that Petitioner's sanity would likely become a significant issue at trial, the court and trial counsel were not obligated to seek psychiatric assistance in exploring the feasibility of a defense of insanity or temporary insanity.   See Ake, 470 U.S. at 82-83.

## C.    Admission of Evidence

Petitioner alleges that she was deprived of her due process and equal protection rights when the trial court admitted the unsworn testimony of Timmer, as well as evidence of other acts. Also included in the discussion of Timmer's unsworn testimony is Petitioner's allegation of ineffective assistance of counsel for failure to object to the admission.

Respondent contends that Petitioner's claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  Lambrix, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

14

### 1.      Unsworn Testimony

Petitioner argues that the admission of Timmer's unsworn testimony violated her constitutional rights, providing cause for a new trial.  In the alternative, Petitioner claims she was denied the effective assistance of counsel when trial counsel failed to object to this error.  It is undisputed that the trial court neglected to administer an oath to Timmer before he commenced his testimony, as required by Michigan Rule of Evidence 603, which provides:

> Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

MICH. R. EVID. 603.  To the extent that Petitioner alleges that the trial court violated Michigan law and procedure in failing to administer an oath, habeas relief is unavailable unless such violations infringe upon federal Constitutional protections.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI. Although the Sixth Amendment protects Petitioner's right to cross-examine all adverse witnesses, there is no case law recognizing a constitutional right to have the witnesses sworn.  See generally Elswick v. Parke, No. 87-6742, 1988 WL 117742 (6th Cir. Nov. 7, 1988).  The record indicates that neither the parties nor the trial court noticed that Timmer was not sworn, and the trial proceeded as if he had taken an oath.  Id.  Defense counsel was able to conduct a full cross-examination and recross-examination of the witness, thus preserving Petitioner's Sixth

Amendment right to confront the witnesses against her.  It was not until appeal that the failure to administer an oath to Timmer was brought to the court's attention.

Petitioner contends that a defendant may not be convicted of a crime on the basis of unsworn testimony.  However, the cases cited by Petitioner in support of her argument are distinguishable as they pertain only to the admission of prior unsworn statements of witnesses.  For instance, the Fourth Circuit Court of Appeals, in <u>United States v. Morlang</u>, found error in the trial court's admission of the out-of-court statements of a prosecution witness.  531 F.2d 183, 188 (4th Cir. 1975).  Prior unsworn statements of witnesses are inadmissible as hearsay: "[t]he introduction of such testimony, even where limited to impeachment, necessarily increases the possibility that a defendant may be convicted on the basis of unsworn evidence . . . ." <u>Id.</u> at 190.  Petitioner misjudges the applicability of such holdings as her case involves the testimony of a witness given in court with full opportunity for cross-examination.

In order to establish ineffective assistance of counsel under the <u>Strickland</u> test, Petitioner must demonstrate that trial counsel's failure to object to Timmer's testimony constituted deficient performance, as well as caused prejudice to the defense.  466 U.S. at 687; <u>see also</u> <u>Elswick</u>, No. 87-6742, 1988 WL 117742, at *4 (6th Cir. Nov. 7, 1988) (rejecting petitioner's alleged ineffective assistance where petitioner could not demonstrate prejudice as a result of counsel's failure to object to unsworn testimony).  Petitioner fails to present evidence that trial counsel's error was so serious as to overcome the strong presumption of adequate assistance and violate her Sixth Amendment right to adequate counsel.  <u>See</u> <u>Id.</u> at 690.  Even if Petitioner presented a compelling argument for deficient performance, she would not prevail in showing that but for trial counsel's error, the result of the trial would have been different.  <u>See</u> <u>Id.</u>, at 694.  The trial

16

progressed as if Timmer had been sworn and counsel fully exercised Petitioner's right to cross-examine Timmer.  As the Michigan Court of Appeals observed, the fact that Timmer was not under oath "did not change the way in which the trial was conducted, and there [was] no indication that Mr. Timmer would have testified differently if an oath was administered to him before he testified."  People v. Aguilar, No. 261725, 2006 WL 2956323, *4 (Mich. Ct. App. Oct. 17, 2006).  It is also unlikely that members of the jury noticed the irregularity in courtroom procedure.  Moreover, had defense counsel raised the objection during trial, there is no reason to presume that the trial court would have excluded Timmer's testimony.  On direct appeal, the Michigan Court of Appeals noted that had the irregularity been discovered during trial, the Court would have promptly corrected the mistake by recalling Timmer to take an oath and re-testify. People v. Aguilar, No. 261725, 2006 WL 2956323, at *4 (Mich. Ct. App. Oct. 17, 2006).  The Court of Appeals also observed that Timmer's testimony was "generally corroborated by the other witnesses at trial, and by defendant as well, as she admitted to entering Timmer's home and bedroom on the morning of July 20, 2004 . . . ."  Id.

The reasoning of the Michigan Court of Appeals in denying Petitioner's claim is similar to that raised in Gutierrez v. Scott, where the Fifth Circuit Court of Appeals examined various factors in determining if counsel's failure to object to unworn witness testimony prejudiced the defense.  No. 94-50669, 1995 WL 337923, at *2 (5th Cir. May 24, 1995).  In Gutierrez, the court found no evidence to suggest that had counsel objected to the unsworn testimony, the testimony would have been different or stricken.  Id.  Furthermore, the unsworn testimony was "cumulative" to testimony presented by  other sworn witnesses during trial.  Id.  The Fifth Circuit thus found that petitioner's right to a proper defense was not prejudiced by counsel's failure to object.  Id.;

17

see also Perez v. California, No. 07-cv-1662-WQH, 2009 WL 800229, at *10 (E.D. Cal. Mar. 25, 2009) (denying a claim for ineffective assistance where there were "no grounds to conclude that the 'testimony' of [the witness] would have been excluded had trial counsel raised an objection").

Petitioner is unable to demonstrate that the state court's decision regarding Timmer's testimony was contrary to or an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d).  In addition, Petitioner fails to show that counsel was ineffective in failing to object on this ground.

### 2.    Other Acts Testimony

Petitioner disputes the admission of Detective Szekely's testimony as to the other acts of larceny Petitioner was suspected of committing.  Petitioner alleges that her right to a fair trial was further violated when the prosecution failed to notify the defense that it intended to present evidence of suspected improper acts.

Although the Michigan Rules of Evidence prohibit the admission of evidence of other acts to demonstrate a defendant's propensity to commit the crimes charged, Rule 404(b)(1) allows such admissions for other purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, *identity*, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. (emphasis added)

The Michigan Court of Appeals held that Detective Szekely's testimony was properly permitted to establish the identity of Petitioner as Timmer's perpetrator.  People v. Aguilar, No.

261725, 2006 WL 2956323, at *5 (Mich. Ct. App. Oct. 17, 2006).  Detective Szekely explained

that he organized a photographic lineup to ensure that Gloria Aguilar and Marie Rodriguez were

in fact the same person.  In addition, the defense did not object during any portion of the

testimony and declined to conduct a cross-examination of the witness.  The Court of Appeals

further noted that at the close of Detective Szekely's testimony, the trial court instructed the jury

to consider the evidence of other acts solely to confirm Petitioner's identity.  Id. at *5.  According

to the Court, "there [was] no reason to assume that the jury used the evidence for an unduly

prejudicial purpose, such as improper character evidence, rather than as evidence bearing

identity."  Id.  Generally, "a jury is presumed to follow the trial court's limited use instruction."

Id. at *6.

It is well established that "federal habeas corpus review does not lie for errors of state

law."  Louis v. Jeffers. 497 U.S. 764, 780 (1990).  "Habeas review does not encompass state court

rulings on the admission of evidence unless there is a constitutional violation."  Clemmons v.

Sowders, 34 F.3d 353, 357 (6th Cir. 1994) (citing Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985)).

Thus, to the extent that Petitioner alleges violations of Michigan law, the claims are not

cognizable upon federal habeas review.

Petitioner must overcome a difficult threshold in order to demonstrate that the trial court's

evidentiary ruling was unconstitutional.  "When an evidentiary ruling is so egregious that it

results in a denial of fundamental fairness, it may violate due process and thus warrant habeas

relief."  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir 2003).  In general, "state-court evidentiary

rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of

justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

19

Id. (citing Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000)).  Moreover, there is no

Supreme Court precedent establishing that a state violates due process by allowing propensity

evidence through the admission of other acts evidence.  Id.  "While the Supreme Court has

addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has

not explicitly addressed the issue in constitutional terms."  Id. at 513.

Petitioner is unable to show that the admission of other acts testimony was a ruling so

egregious as to violate her fundamental rights.  Further, because the trial court's admission of

other acts evidence is not contrary to or an unreasonable application of Supreme Court precedent,

Petitioner's claim for habeas relief is denied.

### D.     Sufficiency of the Evidence

Petitioner claims that the trial court committed reversible error when it denied the

defense's motion for directed verdict because the evidence was insufficient to convict her of first-

degree home invasion and unarmed robbery.  According to Petitioner, there was no evidence from

which a jury could reach a guilty verdict on the charges.  In particular, there was insufficient

evidence to meet the element of entering the home without permission, to demonstrate that

Petitioner was armed with a weapon, and to prove that Petitioner in fact robbed Timmer.

Due process of law "protects the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re

Winship, 397 U.S. 358, 364 (1970).  A federal court, in reviewing a sufficiency of the evidence

claim, must consider whether "after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard of review

"must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Id. at 324 n. 16.

The standard for sufficiency of the evidence claims "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id. at 319.  "A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence." Dell v. Straub, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002) (citing Jamison v. Collins, 100 F. Supp. 2d 647, 705 (S.D. Ohio 2000)).

The Michigan law for first-degree home invasion provides in pertinent part:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

MICH. COMP. LAWS § 750.110a(2) (1979).

To prove the offense of unarmed robbery under Michigan law, the prosecution must demonstrate that the defendant, during the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or assaults or puts the person in fear.   MICH. COMP. LAWS § 750.530.

Petitioner insists that the evidence unmistakably establishes that Timmer unlocked his door and invited her into his home, rather than Petitioner entering the home without permission. This claim is based in part on the argument that Timmer's testimony was unsworn and therefore inadmissible. As discussed in Section B(1), this Court is persuaded that no prejudice occurred as a result of the trial court failing to administer an oath to Timmer.

Petitioner argues that even if Timmer's testimony is to be considered, it is nevertheless insufficient to establish that she entered the home without permission. This argument relies on the testimony of Officer Milton and Timmer's initial report of the incident. According to Officer Milton, Timmer unlocked his door and let Petitioner into his home thinking it was neighborhood children. Timmer testified that he unlocked the door thinking it was an employee, but did not open the door or invite Petitioner into his home. Despite any apparent conflict in the testimony, "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002) (quoting United States v. Adamo, 742 F.2d 927, 935 (6th Cir. 1984)). A federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." 459 U.S. 422, 434 (1983). Consequently, Petitioner's claim as to the credibility of Timmer's testimony is not cognizable upon federal habeas review.

The evidence presented during trial, viewed in a light most favorable to the prosecution, supports a conclusion that Petitioner entered Timmer's home without permission. Timmer testified that he had ended his relationship with Petitioner a number of months prior to the incident of July 20, 2004 (Trial Tr. vol. 2, 134-35). It was established that Timmer was recovering from a recent surgery and expecting an employee to visit his home that morning (Trial

22

Tr. vol. 2, 143-44).   He explained that he unlocked the door for his guest but did not open it

(Trial Tr. vol. 2, 143-44).   Both Timmer and Officer Milton testified that when Timmer realized

that Petitioner was at his door, he instructed her to leave (Trial Tr. vol. 2, 145-46, 202).   Based

upon this testimony, any rational trier of fact could deduce that Petitioner entered Timmer's home

without permission, as required by Section 750.110a(2).  See Jackson, 443 U.S. 307, 319 (1979).

Petitioner contends that the prosecution failed to prove that she was armed with a

dangerous weapon upon entering Timmer's home.  The statute for first-degree home invasion

explicitly states that a defendant is not required to be armed with a dangerous weapon if another

person is lawfully present in the dwelling.  MICH. COMP. LAWS § 750.110a(2).  It is well

established by the evidence that Timmer was lawfully present in his home at the time of the

incident.  Petitioner's argument as to this element of the offense is, therefore, without merit.

Petitioner also challenges the sufficiency of evidence to establish that she committed an

unarmed robbery, though offers little support for the allegation.  Timmer testified that after

Petitioner left his home on the morning of July 20, 2004, he noticed cash and prescriptions pills

had gone missing (Trial Tr. vol. 2, 156).  He observed Petitioner rifling through his pants where

some of the missing cash had been located (Trial Tr. vol. 2, 152).  He also noticed cash on the

floor, apparently dropped by Petitioner as she exited the home (Trial Tr. vol. 2, 156).  Timmer

had been taking pain medication daily to dull the pain of his recent back surgery and asked Roe to

refill the prescription on July 20, 2004 because the pills had gone missing after Petitioner's visit

(Trial Tr. vol. 2, 156).  Even though the prosecution could not establish that Timmer observed

Petitioner actually taking the cash or painkillers from the home, "[a] conviction may be based

upon circumstantial evidence as well as inferences based upon the evidence." Dell v. Straub, 194

23

F. Supp. 2d at 647 (citing Gonzalez v. Reiner, 177 F. Supp. 2d 211, 218 (S.D.N.Y. 2001)).  The

trial testimony produced sufficient evidence from which a reasonable trier of fact could find

beyond a reasonable doubt that Petitioner robbed Timmer of cash and prescription painkillers.

See Jackson, 443 U.S. 307, 319 (1979).

For the foregoing reasons, this Court finds sufficient evidence to sustain Petitioner's

convictions.

### E.      Sentencing

Petitioner alleges that her rights under the United States and Michigan Constitutions were

violated when the trial court sentenced her to a prison term of 20 to 40 years on a habitual

offender fourth supplement for the conviction of first-degree home invasion and to 15 to 20 years

arising out of the conviction for unarmed robbery on a habitual offender fourth supplement.

Specifically, Petitioner argues that the trial court failed to individualize her sentence, that the

sentencing was based upon inaccurate or incomplete information, that the sentence was excessive

as contrary to the Eighth Amendment, and that the sentence violates the holding of Blakely v.

Washington, 542 U.S. 296 (2004).

Habeas review is unavailable to Petitioner for her challenges to the trial court's

interpretation of Michigan sentencing guidelines and the alleged failure to individualize

sentencing.  Petitioner maintains that the trial court refused to consider certain mitigating

circumstances that would have affected her sentencing, such as her history of mental illness.  The

Supreme Court has unequivocally held that "it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.  In conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution, laws, or

treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Generally, a non-capital sentence that falls within statutory limits is not grounds for habeas relief.  Townsend v. Burke, 334 U.S. 736, 741 (1948); see also Cook v. Stegall, 56 F. Supp. 2d 788, 797 (1999).  The Supreme Court "has refused to extend the doctrine of individualized sentencing to noncapital cases."  Hastings v. Yukins, 194 F. Supp. 2d 659, 673 (citing Harmelin v. Michigan, 501 U.S. 957, 995-96 (1991)).  Therefore, since Petitioner has no constitutional right to an individualized sentence, "no constitutional error would occur if the state trial court failed to consider mitigating evidence on her behalf at sentencing."  Id.

Petitioner next argues that she was sentenced based upon inaccurate and incomplete information when the trial court neglected to consider her psychological and substance abuse histories in determining the appropriate rehabilitation.  "[I]t is desirable that the judge in passing sentence be provided with as much and as accurate information on the person to be sentenced as may be reasonably possible under the circumstances of the case."  Collins v. Buchkoe, 493 F.2d 343, 345 (6th Cir. 1974).  While a sentencing judge has wide discretion in considering the reliability and relevance of the sentencing information, the defendant is afforded the opportunity to rebut such information if the information can be proven to have been materially false.  Id.

The Michigan Court of Appeals found that Petitioner "demonstrated nothing exceptional" about her alleged mental illness and substance abuse that would support a departure from the sentencing guidelines:

> A trial court may depart from the sentencing guidelines for substantial and compelling reasons.  Only reasons that are objective and verifiable and 'keenly' or 'irresistible' grab the court's attention will justify a departure.  Even if defendant's drug and mental problems were objective and verifiable, they do not keenly or irresistibly grab attention and warrant a downward departure.  Indeed, defendants in criminal matters are not infrequently addicted to some drug or another.

People v. Aguilar, No. 261725, 2006 WL 2956323, at *7 (Mich. Ct. App. Oct. 17, 2006).
Petitioner fails to show the sentencing information relied upon by the trial judge to be extensively
and materially false, or that she has been denied the opportunity to rebut the information.  See
Townsend, 334 U.S. at 741.

Petitioner contends that the trial court violated the Eighth Amendment of the United States
Constitution and the corresponding amendment of the Michigan Constitution, which prohibit the
infliction of cruel and unusual punishments.  See U.S. CONST. amend. VIII; Mich. CONST. art. I, §
16 (1963).  Petitioner maintains that her prison sentences of 20 to 40 years for first-degree home
invasion and 15 to 40 years for unarmed robbery are grossly disproportionate to the severity of the
crimes committed.  As previously discussed, Petitioner's claim regarding the violation of her
Michigan constitutional rights is not cognizable under federal habeas review.

The Supreme Court has held that "the Eighth Amendment does not require strict
proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are
'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (citing Solem v. Helm, 463
U.S. 277, 288 (1983)).  Courts reviewing Eighth Amendment proportionality must remain highly
deferential to the legislatures in determining the appropriate punishments for crimes.  United
States v. Layne, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing Harmelin, 501 U.S. at 999).  The
Sixth Circuit has adopted the narrow proportionality principle of Harmelin, which does not
mandate strict proportionality between crime and punishment.  Id. at 474.  Because "only an
extreme disparity between crime and sentence offends the Eighth Amendment," a court must "look
to whether a sentence is 'extreme' and 'grossly disproportionate' to assess whether the Eighth
Amendment has been violated."  Id.

26

In the present case, Petitioner's sentences, imposed in part due to her status as a habitual offender, are not grossly disproportionate to the crimes committed. Further, this Court defers to the decision of the state court as the sentences fall within the applicable guidelines range.

Lastly, Petitioner asserts that her sentences violate the law set forth in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), because the facts underlying the sentencing were not admitted by Petitioner or determined by a jury. Petitioner alleges, therefore, that the sentencing violated her Sixth Amendment right to a jury trial.

The Supreme Court in <u>Apprendi v. New Jersey</u> held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). <u>Apprendi</u> ensures "that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended." <u>Blakely</u>, 542 U.S. at 306. In <u>Blakely</u>, the Supreme Court applied the <u>Apprendi</u> rule where the trial judge imposed a punishment exceeding the statutory maximum without making additional findings of fact through the defendant's admission or by jury determination. <u>Id.</u> at 303. The Court in <u>Blakely</u>, emphasizes that indeterminate sentencing schemes are treated differently than the determinate sentencing system addressed in <u>Apprendi</u>:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years,

27

every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

Id. at 308-09. Michigan employs an indeterminate sentencing system where the maximum sentence for a particular crime is established by law rather than by a trial judge. People v. Drohan, 475 Mich. 140, 160, 715 N.W.2d 778 (2006). Thus, Petitioner is mistaken as to the applicability of Blakely to Michigan's indeterminate sentencing scheme; indeterminate sentencing systems do not violate the Sixth Amendment. See Blakely, 542 U.S. at 308-309; see also Tironi v. Birkett, No. 06-1557, 2007 WL 3226198, *1 (6th Cir. Oct. 26, 2007) (holding that Blakely does not apply to Michigan's indeterminate sentencing system). As long as a defendant "receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict." Drohan, 475 Mich. at 164. Given that Petitioner's sentences fall within the statutory maximum, the trial court did not infringe upon her constitutional rights. See Id.

**V.     CONCLUSION**

Petitioner has not established that she is in the custody of the State of Michigan in violation of the Constitution or laws or treaties of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Marianne O. Battani
HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: August 7, 2009

28

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, and counsel for the Respondent.

s/Bernadette M. Thebolt

Case Manager